NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, Room 1407, Boston, MA 02108;
(617) 557-1030.


02-P-1335                                      Appeals Court

J. BRIAN MOORE & another[1]  vs.  GERRITY COMPANY, INCORPORATED.[2]

No. 02-P-1335.

Plymouth.    December 12, 2003.  -  November 29, 2004.

Present: Perretta, Kantrowitz, & Berry, JJ.


Mortgage, Priority, Real estate. Real Property, Mortgage,
    Purchase and sale agreement.


    Civil action commenced in the Superior Court Department on
February 12, 1999.

    The case was heard by Charles J. Hely, J.

    James F. Creed, Jr., for the plaintiffs.
    Stephen A. Greenbaum for the defendants.


    PERRETTA, J.  The Moores appeal from a judgment declaring

that a mortgage deed granted them by Michael J. Delaney on

November 21, 1997, has priority "to the amount of $30,000, and no

more" over the mortgage deed to the same property granted by

Delaney to Gerrity Company, Incorporated (Gerrity), and recorded

on May 19, 1998. Gerrity cross-appeals from so much of the

---

[1] Laura M. Moore.

[2] Although the original complaint contained additional
parties, those named above are the sole parties to this appeal.


Exhibit A

judgment that declares that the Moores' mortgage has priority in the amount of $30,000. All the arguments before us concern the question of Gerrity's knowledge of Delaney's transactions with the Moores. We affirm the judgment.

1. Background. The Moores negotiated with Delaney for the purchase of property situated at 2-4 Wintergreen Farm Road in Pembroke and for the construction of a house to be built by him on that site. The price set out in their original purchase and sale agreement for the land and house was $311,000. The Moores gave Delaney $200,000 as a down payment, and Delaney executed a mortgage in favor of the Moores for that amount as security for their deposit. Although Robert W. Galvin (Robert W.), an attorney with the law firm of Galvin & Galvin (Galvin) notarized Delaney's signature, he did not read the mortgage; the mortgage was not recorded by either Delaney or Robert W. (unrecorded mortgage).

During the time of the negotiations between Delaney and the Moores, Delaney was experiencing financial difficulties, which led him to seek additional financing from Compass Bank for Savings (Compass), also the Moores' choice of lending institution for the financing of their new home. However, Compass refused to extend a loan to Delaney, partly because of the fact that the large amount of the down payment made by the Moores was deemed sufficient to cover the cost of the construction of their house.

Delaney then sought financing from Gerrity, a commercial lending institution. In support of his loan application, Delaney

provided a purchase and sale agreement from the Moores that he
had altered to reflect that the purchase price for the land and
construction of a house thereon was $359,900, and that the Moores
had provided a down payment in the amount of $30,000, to be
secured by a mortgage. Delaney did not provide Gerrity with a
copy of the mortgage. Gerrity's agent, Peter Young, reviewed the
paperwork on Delaney's loan application, which included a copy of
the altered purchase and sale agreement, and retained Galvin for
the purpose of checking the Plymouth County Registry of Deeds to
ascertain whether there were any prior liens on the property.
Although a title search revealed that there were some workmen's
liens, there was nothing to reflect a mortgage in the Moores'
favor.

In May of 1998, Gerrity granted Delaney the requested loan
on the condition that he execute a mortgage on the property in
favor of Gerrity with priority over all other liens and
mortgages. Acting as Delaney's attorney, Galvin negotiated with
his creditors concerning Gerrity's priority and recorded a
mortgage on the property in favor of Gerrity in the amount of
$251,000. Gerrity then advanced Delaney $182,750.

Due to the failure of the sale of the property to occur and
after notice of Delaney's financial difficulties, the Moores, in
early 1999, investigated and discovered that their 1997 mortgage
had not been recorded. Attempting to rectify the situation and
protect themselves, the Moores recorded their mortgage on
February 5, 1999. About seven months later, Delaney was indicted

4

by a grand jury and, on November 30, 2000, pleaded guilty to forgery, uttering, and larceny. The Moores then brought this action seeking to establish the priority of their mortgage, and Gerrity counterclaimed for the full value of its mortgage.

2. The Moores' appeal. General Laws c. 183, § 4, makes clear that "an unrecorded mortgage is invalid as against third parties who do not have 'actual notice' of it." Tramontozzi v. D'Amicis, 344 Mass. 514, 517 (1962). Because the Moores claim that their unrecorded mortgage had priority over Gerrity's, they have the "burden of proving that [Gerrity] had actual notice of" their earlier mortgage. Ibid. In support of their contention that they met their burden of proving that Gerrity had actual notice of the unrecorded mortgage, the Moores make two arguments: (1) the $30,000 mortgage note referred to in the altered purchase and sale agreement that Delaney provided to Gerrity was sufficient to establish that Gerrity had notice of the unrecorded mortgage; and (2) Galvin's actual knowledge of the prior unrecorded mortgage must be imputed to Gerrity.

a. Knowledge provided by the purchase and sale agreement.

The altered purchase and sale agreement made reference to a down payment in the amount of $30,000, which was to be the subject of a mortgage. On that basis, the Moores argue that when Young, Gerrity's agent, reviewed the chain of title at the registry of deeds and did not find the mortgage referred to in the purchase and sale agreement, he should have inquired of the Moores about the referenced mortgage. Put another way, the

Moores argue that Gerrity's knowledge of the reference in the purchase and sale agreement to a mortgage, standing alone, was sufficient to establish the priority of their mortgage. See Connihan v. Thompson, 111 Mass. 270, 271 (1873) ("[n]otice or knowledge of the existence and of the terms of an agreement for the sale of land is . . . sufficient to prevent one who has it from acquiring rights in fraud of that agreement").

The unrecorded mortgage cannot bind persons who are without actual notice of the facts therein recited. "Knowledge of facts which would ordinarily put a party upon inquiry is not enough." McCarthy v. Lane, 301 Mass. 125, 128 (1938). See Tramontozzi v. D'Amicis, 344 Mass. at 517; General Builders Supply Co. v. Arlington Co-op. Bank, 359 Mass. 691, 697 (1971). Gerrity had no obligation to go beyond the registry record and make inquiry of the Moores about any reference in the purchase and sale agreement. Consequently, Gerrity cannot be charged with "actual notice" of the terms of the unrecorded mortgage referred to in the altered purchase and sale agreement.

b. Galvin's knowledge imputed to Gerrity. Robert W. and Robert E. Galvin (Robert E.) represented Delaney and Gerrity in one transaction while Robert E. represented Compass in another. More specifically, Robert W. notarized Delaney's signature on the Moores' $200,000 mortgage while Robert E. received a copy of the parties' purchase and sale agreement during Galvin's representation of Compass on the Moores' application to Compass for financing of their purchase of the property from Delaney.

Robert E. also performed a title search of the property for Gerrity in respect to Gerrity's subsequent loan to Delaney. The sole questions now before us are whether when Gerrity retained Robert E. in May, 1998, to perform a title search of the property in question for purposes of deciding whether it would extend a loan to Delaney, Robert W. had knowledge of the contents of the unrecorded mortgage and, if so, whether that knowledge could be imputed to Robert E., and then to Gerrity. See Quinn v. Hintlian, 4 Mass. App. Ct. 805 (1976) ("attorney's knowledge was properly imputed to the [client]"). Cf. Baker v. James, 280 Mass. 43, 47 (1932); Flynn v. Wallace, 359 Mass. 711, 717 (1971).

The Moores' claim of imputed knowledge fails. In the first instance, Robert W. was not retained by Delaney for the purpose of conducting a title search. Robert W. did no more than notarize Delaney's signature on the unrecorded mortgage. Moreover, the trial judge expressly found that in notarizing Delaney's signature, Robert W. did not read the mortgage above the signature line. That being so, Robert W. had no knowledge about the unrecorded mortgage that could be imputed to Robert E., and, therefore, to Gerrity.

3.  Gerrity's cross appeal. Because the altered purchase and sale agreement, which made reference to a mortgage in favor of the Moores in the amount of $30,000, was never recorded,

---

[3] If either the Moores or Gerrity have any potential and possibly interesting claims against Galvin because of Robert W.'s and Robert E.'s various roles in representing Delaney, Compass, and Gerrity, such claims are not made a part of this appeal.

Gerrity argues that the judge erred in subordinating its mortgage in that amount while also recognizing the priority of its mortgage over that of the Moores' unrecorded mortgage in the amount of $200,000. We think Gerrity's argument misconstrues the purpose and scope of G. L. c. 183, § 4, that is, to allow persons without actual knowledge to the contrary to rely upon registry records. See General Builders Supply v. Arlington Co-op. Bank, 359 Mass. at 697.

While Gerrity had no actual knowledge of the unrecorded $200,000 mortgage, it did have actual knowledge of the altered purchase and sale agreement between Delaney and the Moores. However, the alteration pertained only to the amount of the purchase price and the Moores' down payment. The provision setting out the fact that the down payment was to be secured by a mortgage remained unchanged by Delaney. Because Gerrity had actual knowledge of the existence of the $30,000 mortgage referenced in the altered purchase and sale agreement, we conclude that the fact that the purchase and sale agreement was unrecorded is irrelevant. There is nothing in McCarthy v. Lane, 301 Mass. at 128-129; Tramontozzi v. D'Amicis, 344 Mass. at 517; or General Builders Supply Co. v. Arlington Co-op. Bank, 359 Mass. at 697, which mandates that we conclude otherwise.

Judgment affirmed.