UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS


| | |
|---|---|
| In re:                          )  | |
| MICHAEL J. DELANEY              )  | |
|     Debtor,                     )  | |
|                                 )  | |
| J. BRIAN MOORE,                 )  | C.A. No. 04-10393-NG |
| LAURA M. MOORE,                 )  | |
|     Plaintiffs,                 )  | |
|                                 )  | |
|     v.                          )  | |
|                                 )  | |
| DAVID B. MADOFF, et al.,        )  | |
|     Defendants.                 )  | |

GERTNER, D.J.:

                    MEMORANDUM AND ORDER RE:
            APPEAL FROM THE DECISION AND JUDGMENT OF THE
                UNITED STATES BANKRUPTCY COURT FOR THE
                     <u>DISTRICT OF MASSACHUSETTS</u>
                           April 21, 2005

I.   <u>INTRODUCTION</u>

    Petitioners J. Brian Moore and Laura M. Moore ("Moores") appeal the decision and judgment of the United States Bankruptcy Court for the District of Massachusetts.  Specifically, the Moores argue that the bankruptcy court entered summary judgment *sua sponte* without sufficient notice to the parties and that the Bankruptcy Court improperly applied the provisions of 11 U.S.C. § 365(i).  For the reasons stated below, I find no error on either score and hereby **AFFIRM** the judgment of the bankruptcy court.

II.  <u>BACKGROUND</u>

    The dispute in this case is over a parcel of land identified as "Lot 2-4" located at 74 Wintergreen Farm Road, Pembroke, Massachusetts ("the property").  On November 21, 1997, the Moores

entered into a Purchase and Sale Agreement ("P&S") with Michael Delaney, as trustee of the Quail Run Realty Trust, under which the Trust was to build a home on the property and convey the improved property to the Moores for a total price of $311,000. Upon entering into the agreement, the Moores paid $200,000 of the purchase price and, in exchange, Delaney gave them a mortgage on the property to secure their advance. Delaney assured the Moores that he would record their mortgage.

Shortly thereafter, Delaney obtained a loan from Gerrity Company ("Gerrity") to finance construction, and he secured the loan by giving Gerrity a mortgage on the property.[1] Delaney completed construction of a home on the property and in 1998 gave possession to the Moores, who have been in possession since then. In February 1999 the Moores discovered that Delaney had never recorded their mortgage and recorded it themselves. By this time, however, Gerrity's mortgage and several other mortgages and

---

[1] In a Massachusetts Superior Court action brought by the Moores against Gerrity and others on February 12, 1999, the court found that (1) Delaney had told the Moores that he would record the mortgage but failed to do so; (2) when Delaney approached Gerrity for construction financing, he presented Gerrity with a copy of his agreement with the Moores that Delaney had fraudulently altered, such that the amount of their payment was reduced from $200,000 to $30,000 and the purchase price was increased from $311,000 to $359,000; and (3) when Gerrity made its loan and received its mortgage, it had actual notice of a mortgage to the Moores in the amount of only $30,000. The Moores appealed the Superior Court's ruling that their mortgage had priority to the amount of $30,000 and no more, and Gerrity cross-appealed from the ruling that the Moores' $30,000 mortgage had priority over its lien. On November 29, 2004, the Massachusetts Appeals Court affirmed the judgment of the Superior Court. On February 2, 2005, the Supreme Judicial Court denied the Moores' Application for Further Appellate Review. Delaney was ultimately convicted of forgery, uttering, and larceny in relation to the Gerrity loan and other transactions.

liens had already accrued on the property. The total liens on the property amounted to somewhere in the neighborhood of $1.4 million,[2] while the property itself was only worth approximately $400,000.

On March 22, 2002, Michael Delaney filed for Chapter 7 bankruptcy. With the filing of that petition, an automatic stay against the sale or transfer of the property was entered. On May 8, 2002, Gerrity -- which held the first mortgage of record on the premises -- filed an emergency motion for relief from the automatic stay in order to conduct a mortgagee's foreclosure sale of the premises. This motion was allowed by the bankruptcy court, and Gerrity proceeded with the foreclosure sale on May 10, 2002. On May 20, 2002, however, the Moores filed an objection to the order granting relief from the stay, arguing that Gerrity failed to provide sufficient notice to the junior lienholders in its motion for relief. The bankruptcy court vacated its previous order on May 22, 2002, and held a hearing on the matter on June 4, 2002. Agreeing with the Moores that notice had been defective, the bankruptcy court denied Gerrity relief from the automatic stay on June 17, 2002, and ordered the Moores to file an adversary complaint for adjudication of their rights.

The Moores did so on September 17, 2002, seeking an order compelling the trustee of the bankruptcy estate to convey title

---

[2] There were a total of eight liens and mortgages on the property, in addition to real estate taxes owed to the town of Pembroke.

to the premises free and clear of all liens and encumbrances pursuant to 11 U.S.C. § 363(b) or, in the alternative, to establish under 11 U.S.C. § 365(j) an equitable lien in the amount of $200,000 superior to all other liens.

On March 3, 2003, Gerrity filed a motion for summary judgment on numerous grounds. The bankruptcy court denied Gerrity's motion on April 11, 2003. The Moores then filed an amended adversary complaint on June 19, 2003, seeking the following relief:

> 1. Compel the trustee [under] 11 U.S.C. § 365(i)(2)(B) to deliver title to 74 Wintergreen Farm Road to them upon payment of the balance due on the P&S;
>
> 2. Authorize the sale of 74 Wintergreen Farm Road to the Moores upon payment of the balance due on the P&S free and clear of all liens and encumbrances in accordance with 11 U.S.C. § 363(b) with liens to attach to the proceeds;
>
> 3. Declare that the Moores have a lien on the property at 74 Wintergreen Farm Road under 11 U.S.C. § 365(j) in the amount of $200,000.00 and that such lien primes all other liens on this property other than the statutory lien(s) due to the Town of Pembroke, but only in the event that this Court rejects the Moores' assertion that they have the exclusive right to purchase 74 Wintergreen Farm Road for the balance of the purchase price stated in the rejected executory contract.
>
> 4. Such other and further relief as this Court deems just and proper.

A pre-trial conference was held on December 2, 2003, following which the December 5, 2003, trial date was postponed. As summarized in the minutes from the pre-trial conference, the court essentially outlined the basis for its summary judgment ruling:

> The court abstained from considering the lien priority issues in this adversary proceeding under § 1334(c)(1). . . . This court lacks power to direct the Ch. 7 trustee to conduct a sale free and clear of liens, since there is no equity in the property for the estate.

Notwithstanding these comments, the bankruptcy court invited any party to file a motion for summary judgment, and presumably further briefing.

None of the parties filed a motion for summary judgment, though Gerrity filed another motion for relief from stay on December 9, 2003. On December 29, 2003, the bankruptcy court formally entered judgment against the Moores *sua sponte*, making the following rulings:

> 1. Plaintiffs' request for an order compelling the Chapter 7 Trustree to deliver title to the real property at Lot 2-4 Mattakeesett Street, a/k/a/ Lot 2-4 Wintergreen Farm Road, Pembroke, Massachusetts ("the property") to them upon payment of the balance of the purchase price under their purchase and sale agreement is DENIED AS MOOT;
>
> 2. Plaintiffs' request for an order permitting such conveyance to be made free and clear of liens, with all liens to attach to the proceeds, is DENIED on its merits;

> 3. Plaintiff[s'] request for a declaration under § 365(j) that the Plaintiffs have an equitable lien on the property in the amount of $200,000 is DENIED AS MOOT; and
>
> 4. Plaintiffs' request for a further declaration that such lien primes all other liens on the property other than the statutory lien of the Town of Pembroke is DENIED for lack of subject matter jurisdiction; pursuant to 28 U.S.C. § 1334(c)(1), the Court hereby abstains from determining the priority issue.

Based on these rulings, the bankruptcy court determined that there was no longer any impediment to Gerrity's proposed foreclosure sale and lifted the automatic stay.

The Moores filed a Notice of Appeal with the bankruptcy court on January 7, 2004, and with the clerk of this Court on February 23, 2004. On March 24, 2004, Gerrity filed a motion to dismiss the Moores' appeal as moot, which this Court denied on November 22, 2004.

**III. ANALYSIS**

    **A.**   **Standard of Review**

This Court has jurisdiction to hear an appeal from a final order of a bankruptcy court. See 28 U.S.C. § 158(a). Pursuant to Federal Rule of Bankruptcy Procedure 8013, this Court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bank. Proc. 8013. The bankruptcy court's findings of fact may not be set aside unless clearly erroneous. Id.

Findings of law, however, are reviewed *de novo*.  In re LaRoche, 969 F.2d 1299, 1301 (1st Cir. 1992).  Because there are no issues of fact in dispute here, the bankruptcy court's judgment is reviewed *de novo*.

>    **B.   Did the Bankruptcy Court Improperly Enter Summary Judgment *Sua Sponte*?**

The Moores' first argument is that the bankruptcy court entered summary judgment *sua sponte* on the Moores' claims in its order dated December 29, 2003, without providing sufficient notice to the parties.  Gerrity disagrees that the bankruptcy court's December 29, 2003, decision was essentially an entry of summary judgment.  This position is disingenuous.  At the pre-trial conference on December 2, 2003, Judge Kenner stated that she wished to narrow the issues for trial and began exploring the Moores' claims to the property under §§ 365(i) and 363(b).  Judge Kenner characterized the proceedings as "almost a motion for summary judgment kind of argument," an assertion with which counsel for both Gerrity and the Moores agreed.  Transcript of Pre-Trial Conf. at 20, 30.  It is clear, moreover, that the court's December 29, 2003, decision was dispositive of the Moores' claims.  I will therefore treat the bankruptcy court's December 29, 2003, decision as an entry of summary judgment.

The Moores argue that the bankruptcy court failed to abide by the two conditions precedent to *sua sponte* entry of summary judgment: "(1) the case must be sufficiently advanced in terms of

pretrial discovery for the summary judgment target to know what evidence likely can be mustered, and (2) the target must have received appropriate notice." Rogan v. Menino, 175 F. 3d 75, 79 (1st Cir. 1999). Because the case had advanced to the eve of trial, the parties agree that the first condition was met here. They disagree, however, as to whether sufficient notice was provided.

The provision of sufficient notice "has two aspects: the summary judgment target is entitled to know both the grounds that the district court will consider and the point at which her obligation to bring forth evidence supporting the elements of her claim accrues." Id.; see also id. at 80 ("[O]nce the movant articulates his rationale for *brevis* disposition and submits documentation (if any) on which he relies, Rule 56(c) in terms entitles the summary judgment target to no less than ten days within which to prepare a defense to the motion. This requirement persists even when the trial court aspires to grant summary judgment on its own initiative.").

The Moores rely heavily on Rogan, where the court informed the parties at a chambers conference that it might dismiss some or all of the plaintiff's claims at the final pre-trial conference. Id. at 79. The First Circuit held that "the mere announcement that the court might dismiss the defendants at the final pretrial conference falls well short of the *specific* notice

to which parties are entitled under Fed.R.Civ.P. 56." Id. at 80 (emphasis in original).

This case, however, is plainly distinguishable. The bankruptcy court treated the parties' arguments at the December 2, 2003, pre-trial conference as summary judgment arguments and told the parties that it intended to do so. Even though the court had given the parties an opportunity to discuss the merits of a summary judgment motion at the conference, it nevertheless gave them an opportunity to file formal motions following the conference. In any event, the court did not enter judgment until December 29, 2003, which provided the parties far more than the ten days for response mandated by Federal Rule of Civil Procedure 56.[3]

The bankruptcy court's memorandum and order, furthermore, relied on precisely the rationale advanced by the court during the December 2, 2003, conference, meaning that the Moores had ample *specific* notice of the grounds on which the court believed summary judgment was warranted. Contra Leyva v. On the Beach,

---

[3] At the pre-trial conference, counsel for the Moores stated that his clients were not in favor of "oral motions" and requested an opportunity to respond in writing prior to the bankruptcy court's entry of summary judgment. Counsel went on to state, however, that "in essence, what we're doing is summary judgment and I think the Court stated it earlier, it's like summary judgment. We'd prefer, and we can submit this by oral motion today with memos and submit the entire thing on paperwork within ten days, pursuant to the rule, Court decided [sic] on summary judgment one way or the other." Transcript of Pre-Trial Conf. at 30. Though Gerrity never filed a written motion, it seems clear that counsel for the Moores was well aware of the bankruptcy court's intention to enter summary judgment and understood that he had ten days from the conference to submit a written opposition.

Inc., 171 F.3d 717, 720 (1st Cir. 1999) (reversing a district court's *sua sponte* entry of summary judgment where the court contravened its assurance "that its decision would conform to the limited scope of the motion"). Perhaps even more importantly, the Moores had already extensively briefed the § 365(i) issues that formed the basis of the bankruptcy court's decision prior to the conference, in a memorandum submitted on November 20, 2003.[4] Cf. United States v. Hoyts Cinema Corp., 380 F.3d 558, 569 (1st Cir. 2004) (finding no need to resolve the procedural objection to entry of summary judgment but noting that "on appeal the defendants rely on evidence already in the record as precluding summary judgment; whether with better notice they would have offered even more evidence is unclear"). I believe that the Moores had ample notice of the bankruptcy court's intention to enter summary judgment and the grounds on which it intended to rely. I therefore find no error in the entry of summary judgment *sua sponte*.

    C.    <u>Did the Bankruptcy Court Improperly Apply the Provisions of 11 U.S.C. § 365(i)?</u>

The Moores next challenge the bankruptcy court's resolution of their rights. Specifically, the Moores claim that the bankruptcy court erred in its determinations that the requirements of § 365(i), which deals with executory contracts,

---

[4] The Moores filed their memorandum in response to a memorandum of law addressing the same issues filed by Gerrity on November 21, 2003.

are discretionary and that § 365(i) cannot be implemented absent equity in the property for the estate.[5]

What the Moores owned as of the date of the bankruptcy petition was not title to the property, but an agreement to deliver title under the P&S with Delaney.  The problem is that at the time the P&S was signed, Delaney did not hold title to the property free and clear.  It had been encumbered by a host of other liens.  And the Moores' mortgage, which was not recorded until February 1999, did not have priority.

The language of § 365(i) is as follows:

> (i)(1) If the trustee rejects an executory contract[6] of the debtor for the sale of real property or for the sale of a timeshare interest under a timeshare plan, under which the purchaser in is possession, such purchaser may treat such contract as terminated, or, in the alternative, may remain in possession of such real property or timeshare interest.

---

[5] The Moores' brief sets out four issues presented regarding § 365(i): 1) the propriety of the Court's determination that § 365(i) requires that there be equity in the state; 2) the propriety of the Court's determination that the trustee's duties under § 365(i) are discretionary; 3) the propriety of the Court's determination that § 365(i) cannot be implemented under § 363(b) or otherwise absent an equity state for the bankrupt estate; and 4) the propriety of the Court's determination that the Moores' claim under § 365(i)(2)(B) was moot.

[6] The term "executory contract" is not defined in the Bankruptcy Code. The most widely accepted definition of the term appears in a 1973 law review article: "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance by the other."  Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L. Rev. 439, 460 (1973).  See also Black's Law Dictionary 344 (8th ed. 1999) (defining an executory contract in the bankruptcy context as "[a] contract under which debtor and nondebtor each have unperformed obligations and the debtor, if it ceased further performance, would have no right to the other party's continued performance").

>    (2) If such purchaser remains in possession–
>
>    >  (A) such purchaser shall continue to make all payments due under such contract, but may [] offset against such payments any damages occurring after the date of the rejection of such contract caused by the nonperformance of any obligation of the debtor after such date, but such purchaser does not have any rights against the estate on account of any damages arising after such date from such rejection, other than such offset; and
>
>    >  (B) the trustee shall deliver title to such purchaser in accordance with the provisions of such contract, but is relieved of all other obligations to perform under such contract.

11 U.S.C. § 365(i).[7]  The Moores and Gerrity agree that under the circumstances they had an executory contract -- a contract to deliver title -- which the trustee could accept or reject at his discretion.

The treatment of executory contracts generally under § 365 is unusual.  Rather than mandating the strict enforceability of

---

[7] If the purchaser in possession elects to treat the executory contract as terminated, § 365(j) is applicable:

>  A purchaser that treats an executory contract as terminated under subsection (i) of this section, or a party whose executory contract to purchase real property from the debtor is rejected and under which such party is not in possession, has a lien on the interest of the debtor in such property for the recovery of any portion of the purchase price that such purchaser or party has paid.

11 U.S.C. § 365(j).

these contracts, the "Code grants the debtor, or the trustee, the unilateral right to assume and adopt, or to reject, those contracts deemed to be executory and unexpired leases." Arnold M. Quittner, Executory Contracts and Leases, 877 Practicing Law Institute/Commercial Law and Practice Course Handbook Series 475, 489 (March-April 2005). See 11 U.S.C. § 365(a) ("Except as provided . . . in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."). The trustee's power to reject serves two functions: "It relieve[s] the estate of a burdensome obligations and create[s] a provable, allowable claim for the non-debtor party." Quittner at 489.

Section 365(i), however, provides protection for the non-debtor party and, specifically, purchasers of real property. The primary impetus for adoption of § 365(i) was to ameliorate the harsh results visited upon purchasers of real property by bankruptcy proceedings. See Michael T. Andrew, Executory Contracts in Bankruptcy: Understanding "Rejection", 59 U. Colo. L. Rev. 845, 911 (1988) ("Concern with the plight of real property purchasers, particularly consumer vendees in possession under long term installment contracts, led to the inclusion in the Bankruptcy Code of [§ 365(i)]."). Accordingly, Congress crafted a provision whereby a purchaser of real property under an

executory contract who was already in possession could essentially force the trustee to honor the estate's pre-bankruptcy obligation to deliver title. Even where the trustee prefers rejection, "[a] purchaser in possession may elect to terminate the contract and receive a lien under § 365(j), or he may remain in possession, continue to pay on his contract, and receive title to the property." Summit Land Co. v. Allen, 13 B.R. 310, 317 (Bankr. D. Utah 1981). Because the Moores are purchasers of real property in possession under an executory contract, their contract with Delaney falls within the purview of § 365(i).

As the Moores argue, the plain language of § 365(i) contains no indication that the trustee's obligation to deliver title is discretionary or premised on a finding of equity in the property. See United States v. Ron Pair Enterprises, 489 U.S. 235, 241 (1989) (directing that interpretation of the Bankruptcy Code should begin with its plain language). The legislative history likewise indicates that Congress intended this section to be non-discretionary and divorced from concerns about equity for the estate, as its primary concern was improving the lot of the purchasers. See Summit Land Co., 13 B.R. at 317.[8]

---

[8] The Summit opinion notes that the innovations embodied in §§ 365(i) and (j) were derived from a working paper later published as Frank R. Lacy, Land Sale Contracts in Bankruptcy, 21 U.C.L.A. L. Rev. 477 (1973). See 13 B.R. at 317 (citing Report on the Commission on the Bankruptcy Laws of the United States, H.Doc.No. 93-137, Part I 199 n.114, 206 N.160, Part II 158 n.17, 172073 n.21 (1973)). Lacy's work is illustrative of the concerns that spurred Congress to implement those provisions:

What § 365(i) does not do, however, is provide for delivery of title free and clear of all liens. At oral argument on March 23, 2005, counsel for the Moores argued that this omission is not problematic because § 365(i)(2)(B) requires the trustee to "deliver title in accordance with the provisions of [the executory] contract. . . ." 11 U.S.C. § 365(i)(2)(B). Since the parties agreed that the P&S called for a conveyance of clear record and marketable title, the Moores' counsel contended that the trustee has a non-discretionary obligation to deliver title free and clear of all liens.

The problem with this argument is that it ignores the realities of the situation in which the parties found themselves. Delaney promised the Moores unencumbered title, and at the time he made that promise, it was his to give. In the meantime, however, multiple loans accrued on the property. And once that happened, Delaney no longer possessed unencumbered title and certainly did not have the ability to transfer unencumbered title to anyone else. The idea that the trustee could later deliver a

---

> The purchaser in this kind of contract is likely to be the buyer of a home or farm or small business who has adjusted to a new location. Very often, especially in the case of a residential buyer, he will be poor. Certainly, modern American bankruptcy policy places as high a value on relieving the poor from the consequences of their own and others' improvidence as in doing perfect justice between creditors.

13 B.R. at 317-18 (quoting Lacy at 484).

-15-

title that Delaney himself could not have conveyed outside of the bankruptcy context makes no sense.

Had there been no bankruptcy proceeding, and had they sought to enforce their rights in court, they would not have been able to obtain title "free and clear" because of the other lien holders. In effect, they sought to take advantage of the fact that their claim arose in the bankruptcy context. But nothing in the bankruptcy code enables them to do so.

The Bankruptcy court's resolution of this claim is instructive:

> Section 365(i)(2)(B) obligates a trustee in bankruptcy to deliver title. By this it means such title as the estate has. It does not obligate or permit a trustee to eliminate other interests from the property. Where the Bankruptcy Code empowers a trustee to do this, it does so by express authorization, as in §§ 363(f) and (h). Section 365(i)(2)(B) contains nothing of this sort, no comparable language. When § 365(i)(2)(B) states that the trustee shall deliver title "in accordance with the provisions of" the rejected executory contract, it does not thereby give the trustee a power other than to transfer such title as the estate has. **Under the interpretation proposed by the Moores, a trustee would be authorized to grant better title than the estate has. . . .** Section 365(i)(2)(B) was intended only [to] preserve a purchaser's right to specific performance on an executory contract for sale of real estate; it surely was not intended as a power to cure title defects and for giving purchasers remedies they would not have had, had their sellers not filed bankruptcy.

The Moores themselves seem to have recognized this fact in their arguments to the bankruptcy court, as they sought title only upon the condition that the bankruptcy court order the conveyance of title to be free and clear of all liens pursuant to §§ 363(b) and (f).[9]  That the Moores would seek such an order is hardly surprising: had the Moores paid the remainder of the purchase price without such a proviso, they would have received title to a piece of property burdened by liens that far exceeded its value.  Accordingly, the Moores requested the bankruptcy court to apply § 365(i) in conjunction with §§ 363(b) and (f). See, e.g., Smith v. Ball, 71 B.R. 754, 758-59 (Bankr. M.D. La. 1987) (finding that § 365(i) is not discretionary but noting the "need for notice of the proposed sale under Rule 2002 and court authority to sell under § 363").

---

[9] Section 363(b) permits an estate's trustee to use, sell, or lease property of the estate.  11 U.S.C. § 363(b).  Section 363(f) reads as follows:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if --
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

It is thus clear that a conveyance of title under § 365(i) free and clear of all liens required utilization of §§ 363(b) and (f). And the bankruptcy court correctly explained the interplay among these three sections in its December 29, 2003, Relief from Stay Order:

> First, § 363(f) expressly applies only to a "sale" of property under Section 363. 11 U.S.C. § 363(f) ("The trustee may <u>sell</u> the property . . .") (emphasis added). But a conveyance under § 365(i)(2)(B) is not a sale; that section requires not a sale but *delivery of title*: "the trustee shall deliver title to such purchaser." 11 U.S.C. § 365(i)(2)(B). It does not require that the trustee "sell" the property; indeed[,] § 365(i)(2)(B) applies only where the trustee is deemed to have rejected an executory contract to sell the property. See § 365(i)(1) ("If the Trustee rejects an executory contract of the debtor, for sale of the real property, . . .").
>
> Second, § 363(f) expressly applies only to sales of property "under subsection (b) or (c) of this section." 11 U.S.C. § 363(f). Even if a conveyance under § 365(i)(2)(B) were a sale, it would not be a sale under subsection (b) or (c) of § 363. Rather, it would be a sale under § 365(i)(2)(B). The impetus for this sale would not be liquidation of an asset for the benefit of the estate, but the need to honor, by specific performance, a pre-petition obligation to convey real estate. As the Chapter 7 Trustee maintains and the Moores concede, this transaction would yield no equity or other benefit to the estate. It is not in any sense a sale that the Chapter 7 Trustee, as representative of the estate, is (or would be) undertaking in furtherance of his duties to the estate. Therefore, this conveyance is not one "under subsection (b) or (c) of [§ 363]," as expressly required by § 363(f).

> Third, § 363(f) is expressly permissive, not mandatory: "The Trustee *may* sell . . ." 11 U.S.C. § 363(f). Therefore, the decision as to whether to invoke § 363(f) with respect to a particular sale is entrusted in the first instance to the discretion of the Chapter 7 [T]rustee and subject to review only for abuse thereof. Here, the Moores do not allege that the Trustee is abusing his discretion[,] nor can they: the Trustee's duty is to the estate, but the Moores concede that, even free and clear of liens, the conveyance they seek would yield no benefit to the estate.

In other words, § 363 is concerned with protecting the interests of the estate, rather than purchasers such as the Moores. See David G. Epstein et al., Bankruptcy §§ 4-1, 4-4, 4-7 (1993). With this purpose in mind, there are three reasons the Moores cannot invoke § 363(f) to obtain clear title. First, § 363(f) applies to sales of property, while § 365(i)(2)(B) provides for specific performance of executory contracts. Second, § 363(f)'s application to sales is further narrowed to apply only to sales under § 363(b) or (c); the Moores seek a conveyance under § 365(i)(2)(B). Third, § 363(f) is permissive and left to the judgment of the trustee. The bankruptcy court could disturb the trustee's decision only upon finding that he abused that discretion.

The bankruptcy court did not, therefore, determine that a condition precedent to § 365(i) was equity for the estate; rather, the bankruptcy court properly determined that it was a condition precedent to the operation of §§ 363(b) and (f). Nor

did the bankruptcy court find that the requirements of § 365(i) were discretionary.  Rather, the court denied as moot the Moores' request for delivery of title under § 365(i) based on (1) its ruling that it could not order a conveyance free and clear of all liens and (2) the Moores' own pleadings, which made clear that title was sought only on the condition that it was free and clear of all liens.  Accordingly, I find no error in the bankruptcy court's application of § 365(i).

**IV.  CONCLUSION**

For the foregoing reasons, the judgment of the bankruptcy court is hereby **AFFIRMED**.

**SO ORDERED.**

**Date:     April 21, 2005**              **/s/NANCY GERTNER, U.S.D.J.**