UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:<br>MICHAEL J. DELANEY<br>    Debtor, ) ) ) ) ) | |
| J. BRIAN MOORE<br>LAURA M. MOORE,<br>    Plaintiffs, ) ) ) ) | CIVIL ACTION NO. 04-10393 NG |
| vs. ) ) | |
| DAVID B. MADOFF, TRUSTEE IN BANKRUPTCY FOR MICHAEL J. DELANEY; GERRITY COMPANY, INCORPORATED; CAPE COD LUMBER CO., INC.; SAMPSON LUMBER CO., INC.; C.N.J., INC. D/B/A WHITMAN CARPET & TILE; NORTH RIVER PLUMBING; HEATING & WATER FILTRATION; P.A. LANDERS, INC.; COMMONWEALTH OF MASSACHUSETTS, DEPARTMENT OF REVENUE; KEVIN KILEY and SUSAN KILEY; SCOTT KEARNS and SANDRA KEARNS & TOWN OF PEMBROKE, DELANCON CORPORATION, MATTHEW DELANEY, PAMELA E. INGHAM f/k/a PAMELA E. DELANEY, MICHAEL J. DELANEY, TRUSTEE OF THE QUAIL RUN REALTY TRUST and MICHAEL DELANEY,<br>    Defendants. | |

APPELLANTS' MOTION FOR REHEARING
PURSUANT TO FED. R. BANK. P. 8015

1

NOW COME the Appellants, J. Brian Moore and Laura M. Moore (hereinafter, the "Moores"), pursuant to 28 U.S.C. §158(a) and Fed. R. App. P., Rule 6(b)(2)(A)(1) and Fed. R. Bank. P. 8015, for a rehearing of the issues presented to the United States District Court on appeal from a decision of the United States Bankruptcy Court. As reason therefore, the Moores state as follows:

I.   RELEVANT FACTS

A Pre-Trial Conference, noticed as a "non-evidentiary" hearing, was scheduled for December 2, 2003 (App.Rec.48), just prior to the December 5, 2003 trial scheduled in this action. App.Rec.49. The pre-trial conference was noticed as a "non-evidentiary" hearing to conduct an examination of the issues before the Court. Instead, the Court determined the Moores claims, abstained from determining the priority of liens, indicated that it would grant the Gerrity Company relief from stay, and continued the trial generally. At that hearing, the Court refused to hear oral argument by counsel offered in response to the Court's statements.

On December 10, 2003, the Bankruptcy Court issued its Minutes/Order from that Pre-Trial Conference which, in pertinent part, determined as follows:

> "The Court abstained from considering the lien priority issues in this adversary proceeding under sec. 1334(c)(1). This Court lacks power to direct the Ch.7 Trustee to conduct a sale free and clear of liens, since there is no equity in the property for the estate. The Court continued the trial scheduled for December 5, 2003 generally."

App.Rec.55.

On December 23, 2003, in response thereto, the Moores filed with the Bankruptcy Court a Notice of Voluntary Dismissal of their claims before the Court, which was opposed by the Gerrity

2

Company, Inc. The Notice was docketed and ruled on by the Bankruptcy Court on December 30, 2003.

On December 29, 2003 the Bankruptcy Court issued its Judgment (App.Rec.56) and Memorandum of Decision in the Adversary Proceeding formally disposing of all of the Moores claims. Therein the Bankruptcy Court stated, as follows:

> "At a pretrial conference held two days before the scheduled trial, the Court inquired especially into the legal basis for the Moores' second request: for an order declaring that the requested conveyance under §365(i)(2)(B) be a conveyance free and clear of liens, with liens to attach to the proceeds. The Court heard the parties positions and arguments on the issue and determined that (1) a conveyance under §365(i)(2)(B) cannot be free and clear of liens and (2) because the Moores are unwilling to complete the purchase unless it would give then title free and clear of liens, this renders moot the Moores' first request (for an order under §365(i)(2)(B) compelling the Chapter 7 Trustee to deliver title to the Moores upon their payment of the balance of the purchase price). Accordingly, the Court cancelled the trial as unnecessary and invited Gerrity to file a motion for relief from stay."

App.Rec.57, pps.5-6.

II.  ARGUMENT FOR REHEARING

A.  **Summary Judgment**

The Court's determination that counsel for the Moores was seemingly "well aware of the bankruptcy court's intention to enter summary judgment and understood that he had ten days from the conference to submit a written opposition," United States District Court, Memorandum and Order of April 21, 2005, p.9, fn.3, is not supported by the docket or the transcript cited for that determination. The Moores were not presented with notice that the Court would be deciding the case by summary judgment, and denying their right to a trial. Indeed, in the same transcript, in response to the quoted comments of the Moores' counsel, the Court then states:

> **"But only on this situation. Had there been equity in the property, 365(i) might have provided a remedy; but under these circumstances where the**

3

> **property is so grossly under water, this simply isn't, and there's – I see no – no authority whatsoever to compel Mr. Madoff to conduct a sale free and clear of liens under these circumstances. So let's do this:**
>
> **The trial is continued generally. I'm not going to – I'm not going to go forward with that – it – because it's – I think it's useless. With respect to the – that's with respect to the 365(i)(2)(B) aspect of it. I think it's – if any party wants to file a motion for summary judgment, they're welcome to it."**

Transcript of Pre-Trial Conference, pps.30-31, App. Rec. 58.

The Court did not indicate that it was seeking to enter judgment, indeed the Court specifically continued the trial generally, and left it to the parties to file motions for summary judgment if they so chose.

On December 29, 2003, only 20 days after the "non-evidentiary" hearing, the Bankruptcy Court entered judgment in the Adversary Proceeding, determining their claims. No motion was filed by either party seeking such a judgment. No notice was given to the parties that the Court would be determining the case *sua sponte*. Under these circumstances a non-evidentiary pretrial conference falls well short of the specific notice to which parties are entitled to allow a trial court to grant summary judgment *sua sponte*.

To the extent this Court believes that the basis for the Bankruptcy Court's decision was clearly articulated and noticed on December 2, 2004 at the Pre-Trial Conference, then certainly, the transcript of that proceeding would be a document necessary for the preparation of a motion setting forth the Moores' opposition to the looming disposition of their claims. The District Court ignores the fact that the transcript, which was ordered through the Bankruptcy Court transcription service, was completed and signed by GCI Transcription Services on December 19, 2004, and not received by the Moores' counsel on December 22, 2004. A mere seven days prior to the entry of summary judgment. Transcript of Pre-Trial Conference, Cover Sheet, App. Rec.

4

58.

Without advance notice of the basis of a looming dismissal, a targeted party lacks a "meaningful opportunity to cull the best evidence supporting his position, and to present that evidence, together with developed legal argumentation, in opposition to the entry of summary judgment." *Berkovitz v. HBO, Inc.*, 89 F.3d 24, at 31 (1'st Cir. 1996). And where, as here, the summary judgment loser was never afforded such an opportunity, *sua sponte* summary judgment cannot stand. *See id.* at 29 (holding that the trial court must provide a targeted party with an "adequate opportunity to dodge the bullet" before entering *sua sponte* summary judgment)." *Rogan v. Menino*, 175 F.3d 75. *Id.*

### B.    11 USC §365(i)

The Bankruptcy Court stated its rationale for the ultimate decision at the Pre-Trial Conference,

> "... **Had there been equity in the property, 365(i) might have provided a remedy; but under these circumstances where the property is so grossly under water, this simply isn't, and there's – I see no – no authority whatsoever to compel Mr. Madoff to conduct a sale free and clear of liens under these circumstances ...** "

Transcript of Pre-Trial Conference, p.31.

The Moores' Adversary Complaint presents to the Court their claim, based on their physical possession of the Premises under the Purchase and Sale Agreement, to complete the purchase of the Premises form the Debtor, through the Trustee, pursuant to rights granted to persons situated similarly to them under 11 USC §365(i). In order to assert the right set forth in the statutory scheme the Moores must meet certain prerequisites under this section of the Code, they must:

5

    **1)**      **have an executory contract; and,**

    **2)**      **be possession of the real estate; and,**

    **3)**      **have the bankruptcy trustee reject the contract.**

That the Moores met these prerequisites is not in question.

The District Court's decision, in addressing the Moores argument, states, "it ignores the realities of the situation in which the parties found themselves." United States District Court, Memorandum and Order of April 21, 2005, p.15. However, the same could be said of the Court itself in ignoring the fact that the case evolves from a bankruptcy filing, and drawing a prophylactic distinction between equity and title in this case. If the intent of Congress was to further limit the right set forth in §365(i) to only cases wherein there was equity for the bankrupt estate, or where title was clear, that would have been stated therein. It is not. Indeed, the fact that the statute requires the Trustee's rejection of the contract as a precondition to the right is contrary to the Court's analysis. As a result the very preconditions to asserting the right guaranteed by §365(i) are the foundation of the Court's basis for denial of a remedy thereunder. Under the Court's analysis §365(i) is rendered an assertable right in search of an unattainable remedy.

The Moores assert that the language of the statute is clear, unambiguous and unequivocal, and that the Court's decision was accomplished by ignoring the edict and purpose of the statute. The resulting decision eviscerates the right intended by Congress to be exercised by the Moores, and persons similarly situated to them, by denying, under all conceivable circumstances, the remedy provided therein. The Court creates discretion in the Trustee, where Congress left none.

As Judge Queenan stated in *In re: A.J. Lane*, 107 B.R. 435, 438 (1989):

"Congress certainly knows how to protect property interests from termination through

rejection. Rejection by a lessor of real estate, by a seller of timeshare realty interests, or by a licensor of intellectual property does not terminate the property interest of the other party unless that part elects to treat his interest as terminated. §365(h) and (n). **Similar protection is given a purchaser in possession under the debtor's executory contract to sell real property. He is entitled to remain in possession notwithstanding the debtor's rejection of the contract, provided that he continues to make payments under the contract, and he has the right to offset against the remaining purchase price any damages caused by the debtor's non-performance. §365(i). Upon completion of the payments, the bankruptcy estate is required to deed him the property. Id**." (Emphasis added).

The provisions of §365(i)(1) and (2)(A) and (B) are clear on their face: they allow a purchaser in possession under a rejected "contract of the debtor for the sale of real property . . .; [to remain in possession and complete the purchase; and, if they do,] the Trustee shall, deliver title in accordance with the provisions of such contract . . . [T]he Supreme Court has established the analysis for construing a provision of the Bankruptcy Code that is clear on its face:

> **'The task of resolving [a] dispute over . . . meaning begins where all such inquiries must begin: with the language of the statute itself, in this case it is also where the inquiry should end, for where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'**

*U.S. v. Ron Pair Enterprises*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed2d 290 (1989)(*quoting Caminetti v. United States*, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917)." *Butler v. Resident Care Innovation Corp.*, 241 B.R. 37 (D.R.I. 1999). If it were otherwise, then this Court would not have had to conduct the executory contract analysis set forth both in *In re: Roxse Homes, Inc.*, 74 BR 810 (1987), and *Roxse Homes, Inc. v. Roxse Homes Limited Partnership*, 83 BR 185 (1988).

Indeed, as the Bankruptcy Court itself stated in its June 17, 2002 Order, the Trustee's obligation to convey title under the provisions of 11 U.S.C. §365(i) appear "to be neither discretionary nor contingent on the estate's having equity in the property . . . The language of the

statute is unambiguous and not discretionary: 'the trustee shall deliver title to such purchaser.' 11 U.S.C §365(i)(2)(B).'' Thus, ". . . [a]llowing the purchaser to remain in possession and to receive title suggests a concern for buyers whose connection with the land is more permanent than ephemeral, more continuous than intermittent, more exclusive than shared, and more personal than delegable. The Commission's emphasis on dislocation, for example, is meaningless in the event a contract is transferred to another. Indeed, the distinction between "purchaser in possession" and "party not in possession" may reflect congressional awareness that buyers under land sale contracts often assign their interest to third parties.

"Allowing the purchaser to retain the investment value of the land also has significance. It is unlikely that Congress wanted to encourage investment in any speculative sense. Rather, the mention of residential buyers, consumers, and the poor in the Commission Report and Lacy article suggests a concern for buyers whose connection with the land is in fee simple, not fractionated, and is more productive and long term than speculative and short term. Congress intended to prevent the forfeiture of investment gains by the poor rather than to create investment opportunities for the rich. See, e.g., *Krasnowiecki*, The Impact of the New Bankruptcy Reform Act on Real Estate Development and Financing, 53 Am. Bank. L.J. 363, 384 (1979).

IV.     CONCLUSION

In light of the above, the United States District Court should schedule a rehearing of this appeal pursuant to Fed. R. Bank. P. 8015, and grant such other and further relief as this Court deems just and proper.

Respectfully submitted,
For the Plaintiffs,
J. Brian Moore and Laura M. Moore,
By their attorney

_____
James F. Creed, Jr.
BBO#552138
Sara D. Trupe Cloherty
BBO#632528
CREED & FORMICA
1329 Highland Avenue
Needham, MA 02492
(781) 449-4600

Dated: 5/2/05

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: )<br>MICHAEL J. DELANEY )<br>    Debtor, )<br>)<br>)<br><br>J. BRIAN MOORE )<br>LAURA M. MOORE, )<br>    Plaintiffs, )<br>)<br>)<br>vs. )<br>)<br>DAVID B. MADOFF, TRUSTEE IN )<br>BANKRUPTCY FOR MICHAEL J. )<br>DELANEY; GERRITY COMPANY, )<br>INCORPORATED; CAPE COD )<br>LUMBER CO., INC.; SAMPSON )<br>LUMBER CO., INC.; C.N.J., INC. )<br>D/B/A WHITMAN CARPET & TILE; )<br>NORTH RIVER PLUMBING; )<br>HEATING & WATER FILTRATION; )<br>P.A. LANDERS, INC.; )<br>COMMONWEALTH OF )<br>MASSACHUSETTS,DEPARTMENT OF )<br>REVENUE; KEVIN KILEY and )<br>SUSAN KILEY; SCOTT KEARNS and )<br>SANDRA KEARNS & TOWN OF )<br>PEMBROKE, DELANCON )<br>CORPORATION, MATTHEW )<br>DELANEY, PAMELA E. INGHAM f/k/a )<br>PAMELA E. DELANEY, MICHAEL )<br>J. DELANEY, TRUSTEE OF THE )<br>QUAIL RUN REALTY TRUST )<br>and MICHAEL DELANEY, )<br>    Defendants. ) | CIVIL ACTION NO. 04-10393 NG |

CERTIFICATE OF SERVICE

I, Deborah Rizzotto, hereby certify that on this date I caused a true copy of the foregoing document to be served on the following by first class mail, postage prepaid:

David B. Madoff, Esquire
Chapter 7 Trustee
Cohn, Khoury, Madoff & Whitesell
101 Arch Street
Boston, MA  02110

Gary Cruickshank, Esquire
21 Custom House Street, Suite 920
Boston, MA  02110

United States Trustee
1184 Thomas P. O'Neill, Jr.
 Federal Building
10 Causeway Street
Boston, MA  02222

Gerrity Company, Inc.
c/o Stephen A. Greenbaum, Esquire
Greenbaum Nagel Fisher & Hamelburg
200 High Street
Boston, MA  02110

Cape Cod Lumber Co., Inc.
c/o Michael S. Kalis, Esquire
632 High Street
Dedham, MA  02026

Comm. Of Mass Dept. of Revenue
c/o Stephen G. Murphy
Counsel to the Commissioner
Massachusetts Department of Revenue
51 Sleeper Street, PO Box 9486
Boston, MA  02205-9486

Kevin P. Kiley and Susan Kiley
c/o Wilson D. Rogers, Jr., Esquire
The Rogers Law Firm
One Union Street
Boston, MA  02108

Town of Pembroke
c/o Joel B. Bard, Esquire
Kopelman and Paige, PC
31 St. James Avenue
Boston, MA  02116-4102

North River Plumbing, Heating
 & Water Filtration
44 Mountain Avenue
Pembroke, MA  02359

C.N.J., Inc.
421 Bedford Street
Whitman, MA  02382

Sampson Lumber Co., Inc.
PO Box 1149
Pembroke, MA  02359

Scott and Sandra Kearns
c/o Kethro & Thomas, PC
1165 Washington Street
Hanover, MA  02339

Cape Cod Lumber Co., Inc.
PO Box 2013
Abington, MA  02351-0513

Kevin P. Kiley and Susan Kiley
47 Colasanti Drive
Weymouth, MA  02191

Town of Pembroke
Town Hall
Pembroke, MA  02359

P.A. Landers, Inc.
c/o Elliot M. Sherman, Esquire
Baron Burgess & Trifilo, LLP
45 Fairfield Street
Boston, MA  02116

P.A. Landers, Inc.
24 Factory Pond Road
Hanover, MA  02339

Stephen E. Shamban, Esquire
639 Granite Street
PO Box 850973
Braintree, MA 02185

Quail Run Realty Trust
c/o Michael Delaney
48 Fieldstone Drive
Pembroke, MA 02359

Pamela Ingham
35 Misty Meadow Road
Pembroke, MA 02359

Scott Peterson, Esquire
Healy & Healy, PC
15 Walnut Street
Wellesley, MA 02481

Matthew Delaney
47 Wintergreen Farm Road
Pembroke, MA 02359

Michael Delaney
PO Box 726
Hanover, MA 02339

Delancon Corp.
c/o Michael Delaney
48 Fieldstone Drive
Pembroke, MA 02359

Richard S. Hackel, Esquire
98 N. Washington Street
Boston, Massachusetts 02114

/s/ Deborah Rizzotto
Deborah Rizzotto

Dated: 5/2/05